United States District Court
Southern District of Texas
**ENTERED**
December 23, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| QIURONG ZHU, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:25-CV-00239 |
| | § | |
| KRISTI NOEM, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Petitioner Qiurong Zhu's ("Petitioner" or "Mrs. Zhu") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1.), and Respondents Motion to Dismiss, (Dkt. 12). Petitioner challenges the lawfulness of her prolonged detention by Immigration and Customs Enforcement (ICE). (Dkt. 1.) For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is GRANTED IN PART, and Respondents Motion to Dismiss, (Dkt. 12), is DENIED.

Respondents are ORDERED to release Petitioner from custody on or before **December 26, 2025**, subject to reasonable conditions of supervision. The Parties must notify the Court of the status of Petitioner's release by **5 P.M. Central Standard Time (CST) on Monday, December 29, 2025**.

### Background

#### A. Factual Background and Immigration Information

Petitioner is a citizen of China who entered the United States in February 2001. (Dkt. 1 at 6; Dkt. 12 at 2, 3–4.) Petitioner applied affirmatively for asylum. (Dkt. 1 at 6; Dkt. 12 at 4; Dkt.

1 / 19

13 at 8.) In October 2008, an Immigration Judge denied Petitioner's asylum application but granted her withholding of removal pursuant to 8 U.S.C. § 1231(b)(3). (Dkt. 1, Attach. 1; Dkt. 13 at 9.)[1] Both Mrs. Zhu and the Government waived appeal of the immigration court's order. (Dkt. 1, Attach. 1; Dkt. 12 at 2; Dkt. 13 at 9.) Therefore, Petitioner's order of removal became administratively final on October 9, 2008. (Dkt. 15 at 6); *see* 8 C.F.R. § 1241.1. On April 16, 2009, Petitioner was released on an order of supervision. (Dkt. 1, Attach. 2; Dkt. 12 at 4.)

Mrs. Zhu married a U.S. citizen on February 23, 2010. (Dkt. 1 at 6.) Since being granted withholding of removal in 2008, Respondents have issued Employment Authorization Documents (EAD) to Petitioner at least ten separate times. (*See* Dkt. 1, Attach. 3; Dkt. 15 at 11–12).[2] Petitioner currently has a pending Form I-130 filed by her U.S. citizen spouse offering a potential pathway to lawful permanent residency. (Dkt. 1 at 7–8.) Additionally, she and her husband have an eleven-year-old U.S. citizen son who has autism and who relies heavily on his mother for caregiving. (*Id.* at 6.) Petitioner does not have any criminal history, and she maintained full compliance with her ICE check-ins throughout the approximately seventeen years that she was under an order of supervision. (*Id.*; Dkt. 13 at 8.)

On October 2, 2025, Petitioner appeared for her regularly scheduled check-in at the ICE office in Baltimore, Maryland. (Dkt. 1 at 6; Dkt. 13 at 7–8.) At her check-in, ICE officials detained her and transferred her to the Laredo Detention Center in Laredo, Texas. (Dkt. 1 at 6; Dkt. 13, Attach. 1; *see* Dkt. 12 at 2, 4.)

---

[1] The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries. The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries.

[2] In order for a noncitizen to be granted EAD, the Government must determine that the noncitizen cannot be removed "due to refusal of all countries designated by the alien or under this section to receive the alien," or "the removal of the alien is otherwise impracticable or contrary to the public interest." *See* 8 U.S.C. § 1231(a)(7)(A).

On October 2, 2025, Respondents provided Petitioner with a notice indicating ICE's intention to remove her to Mexico. (Dkt. 1 at 7; Dkt. 13 at 5.)[3] Petitioner fears persecution in Mexico, does not have any ties to Mexico, and does not currently qualify for legal immigration status in Mexico. (Dkt. 1 at 7.) On October 15, 2025, Petitioner had a U.S. Citizenship and Immigration Service (USCIS) fear screening interview regarding her potential removal to Mexico, and to date she has not received any result from that interview. (*Id.*)

On November 12, 2025, ICE Enforcement and Removal Operations (ICE ERO) submitted a citizen acceptance request to the countries of Belize, Costa Rica, and Panama. (Dkt. 12 at 4; Dkt. 13, Attach. 1.) On that same day, Panama and Belize denied the acceptance request. (Dkt. 12 at 4; Dkt. 13, Attach. 1.) On November 17, 2025, Costa Rica denied the acceptance request. (Dkt. 12 at 4; Dkt. 13, Attach. 1.)

Petitioner remains detained at the Laredo Detention Center in Laredo, Texas. (Dkt. 1 at 6.; Dkt. 12 at 2; Dkt. 13, Attach. 1.)

### B. Procedural Background

Petitioner filed a petition for a writ of habeas corpus on November 26, 2025. (Dkt. 1.) The Court ordered Respondents to show cause and submit a response to Petitioner's petition on or before December 10, 2025, and ordered Petitioner to submit a reply to Respondents' response by December 17, 2025. (Dkt. 4.) Respondents timely filed a Response and Motion to Dismiss, and Petitioner timely filed her Reply. (Dkts. 12, 15.)

---

[3] Respondents submitted a "Notice of Removal" as an attachment to their Motion to Dismiss, stating Respondent's intent to remove Petitioner to Mexico, but Respondents do not acknowledge this as a country with a pending removal request throughout their briefing or in the Declaration of Supervisory Detention and Deportation Officer Juan M. Garza. (*See generally* Dkt. 13; *see also id.* at 5; *id.*, Attach. 1; Dkt. 15 at 10–11.)

**Legal Standard**

**A.  28 U.S.C. § 2241**

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). 8 U.S.C. § 2241(c)(3) authorizes "any person to claim in federal court that he or she is being held 'in custody in violation of the Constitution or laws. . . of the United States.'" *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Accordingly, 8 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear challenges to the lawfulness of immigration-related detention. *Id*. (citing 8 U.S.C. § 2241(c)(3)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (unpublished); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) (unpublished).

Habeas is "the basic method for obtaining review of continued *custody after* a deportation order had become final" and is available "as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687–8 (citation omitted). "Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question." *Id*. at 699 (citing 8 U.S.C. § 2241(c)(3)).

Moreover, a Court is not required to hold a hearing when the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v.*

*Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted); *see also Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *2 (W.D. Tex. Oct. 24, 2025) (citation omitted).

### B.  Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "lack of subject-matter jurisdiction" Fed. R. Civ. P. 12(b)(1). The burden of establishing subject-matter jurisdiction rests on the Petitioner. *See Hartford Ins. Group v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citations omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted).

### C.  Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). But when a party has filed for the writ of habeas corpus "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

## <u>Discussion</u>

As a preliminary matter, the Court refrains from considering the merits of Mrs. Zhu's Third Claim because it appears premature. (*See* Dkt. 1 at 10.) Mrs. Zhu's Third Claim is that Respondents' policy on third-country deportations, which allows a non-citizen to be deported to a third country based on generalized assurances from that country's government that noncitizens

will not be tortured in that country, violates her right to procedural due process. (*Id*.) However, Respondents do not appear to currently have any third countries to which they are actively trying to remove petitioner nor any countries that have agreed to accept Petitioner, therefore this claim appears premature at the current moment. (*See* Dkt. 15 at 20) ("[a]s a threshold matter, Respondents' plan to remove Petitioner to a 'third country' is currently academic. As detailed above, no country has agreed to accept petitioner"); (*see generally* Dkts. 12, 13) (recognizing that Respondents have only submitted citizen acceptance requests to Belize, Costa Rica, and Panama, each of which denied the request.) Thus, Petitioner's Third Claim regarding the process she is due prior to removal to a third country remains pending with this Court.

Four claims remain for the Courts consideration. Mrs. Zhu's remaining claims present statutory, constitutional, and regulatory challenges to her post-removal-order detention by ICE. The Court first briefly analyzes whether it has jurisdiction to hear Petitioner's claims. Finding that it does, the Court addresses the merits of Petitioner's claims that her detention is not authorized under 8 U.S.C. § 1231(a)(6) and the Fifth Amendment because her removal is not reasonably foreseeable. In assessing the merits of Petitioner's claim, the Court first addresses whether Petitioner's current detention is presumed to be reasonable. The Court then turns to the question of whether there is a significant likelihood that Mrs. Zhu's removal will occur in the reasonably foreseeable future. Finding that Mrs. Zhu's removal is not reasonably foreseeable, the Court holds that her detention is not authorized under 8 U.S.C. 1231(a)(6).

### A.  Subject Matter Jurisdiction

Before considering the merits of Petitioner's claims, the Court must determine whether it has subject matter jurisdiction. *See Rivero v. Fid. Invs., Inc.*, 1 F.4th 340, 344 (5th Cir. 2021) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). A district court's habeas

jurisdiction includes challenges to immigration-related detention. *Zadvydas*, 533 U.S. at 687; *see also Demore*, 538 U.S. at 517; *Baez*, 150 F. App'x at 312; *Oyelude*, 125 F. App'x at 546. Although several sections of the Immigration and Nationality Act (INA) strip federal district courts of the jurisdiction to hear challenges to immigration-related actions, none of these jurisdiction stripping provisions bar courts from hearing a habeas petitioner's challenge to her detention, as opposed to her removability. *See Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019).

Without citation to any statutory authority, Respondents briefly argue that the "Court lacks jurisdiction to review Petitioner's due process claims because they are inextricably intertwined with ICE's unreviewable authority to execute a final order of removal." (Dkt. 12 at 9–10) (citing *C.R.L. v. Dickerson, et al*, 2025 WL 1800209 at *2–3 (M.D. Ga. June 30, 2025) and *Diaz Turcios v. Oddo*, 2025 WL 1904384 at *5 (W.D. Pa. July 10, 2025)). Petitioner responds to this by arguing that district courts have not been stripped of jurisdiction to resolve claims of prolonged detention. (Dkt. 15 at 24–28.) The Court agrees with Petitioner.

The two cases cited by Respondent are non-binding district court cases from outside of the Fifth Circuit. (Dkt. 12 at 9–10) (citing *C.R.L.*, 2025 WL 1800209 at *2–3 and *Diaz Turcios*, 2025 WL 1904384 at *5). Moreover, the two district court opinions did not resolve claims related to prolonged detention but instead analyzed jurisdiction to hear claims related to the process due before a third-country removal. *See C.R.L.*, 2025 WL 1800209, at *1 n.1; *Diaz Turcios*, 2025 WL 1904384, at *2. Each relied on reasoning that 8 U.S.C. §§ 1252(a)(5) and (b)(9) strip district courts of jurisdiction to hear claims related to third country removal. (*See id*.) The Court finds these cases inapposite for determining the Court's jurisdiction to decide Petitioner's claims of unlawful detention.

8 U.S.C. §§ 1252(a)(5) and (b)(9), do not strip the Court of jurisdiction to hear Petitioner's claims of prolonged post-removal-order detention. First, the statutory text of 8 U.S.C. § 1252(a)(5) is clear: the court of appeals is the "sole and exclusive means for judicial review of an order of removal." However, the only country to which Petitioner has a final order of removal is China, and Petitioner does not challenge her underlying removal order, entered in 2008, which remains undisturbed no matter the outcome of her current claims. (*See* Dkt. 15 at 25–26.) Rather, she challenges her current prolonged detention. (*Id.*) Therefore 8 U.S.C. § 1252(a)(5) does not strip the Court of jurisdiction to hear Petitioner's current claims.

Second, 8 U.S.C. § 1252(b)(9) does not strip the Court of jurisdiction to hear Petitioner's claims. In *Jennings v. Rodriguez*, 583 U.S. 281, 292–294 (2018), the Supreme Court discussed the extent to which 8 U.S.C. § 1252(b)(9) strips courts of jurisdiction to hear claims challenging executive agencies' detention authority. The Court declined to interpret § 1252(b)(9) as stripping courts of jurisdiction to hear such claims. *Jennings*, 583 U.S. at 292–294. Where, as here, Petitioner brings statutory and constitutional claims challenging her post-removal-order detention, 8 U.S.C. § 1252(b)(9) does not strip district courts of jurisdiction to hear such claims. *See id*.

Finally, Respondents do not raise nor cite to cases that discuss the jurisdiction stripping provision 8 U.S.C. § 1252(g), however the Court addresses this provision briefly. (*See* Dkt. 12.) Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," even when review is otherwise provided for through 28 U.S.C. § 2241. However, where, as here, a petitioner does not challenge her removal order but instead challenges the lawfulness of her post-removal-order detention, § 1252(g) does not strip the Court of jurisdiction to hear her claims. *See*

*Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (citation omitted) ("Section 1252(g) does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g)."); *Cruz Medina v. Noem*, 2025 WL 3157608, at *1 (D. Md. Nov. 12, 2025) ("[T]here is no dispute that this Court has jurisdiction over Petitioner's claim that he should be released from detention under *Zadvydas*."); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (citing *Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999).

The Court find that it has subject matter jurisdiction over Petitioner's indefinite detention claims and moves to the merits.

## B.  The Extent of Immigration Officials' Detention Authority Under 8 U.S.C. § 1231(a)(6)

The principal issue before the Court is whether Petitioner's continuing post-removal-order detention is authorized under 8 U.S.C. § 1231(a)(6). (Dkt. 1 at 9–11; Dkt. 12 at 4–8.) Section 1231 generally governs post-removal order detention, or detention of a noncitizen subject to a "final order of removal." 8 U.S.C. § 1231. Pursuant to § 1231, once an immigration judge issues a removal order and that order becomes "final," the Attorney General has ninety days to affect the detainee's departure from the United States. *See* 8 U.S.C. § 1231(a)(1)(A); *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). In general, during this 90- day removal period, the detainee must remain detained. 8 U.S.C. § 1231(a)(2). If the detainee is not removed within that 90-day period, she may then become eligible for supervised release. *See* 8 U.S.C § 1231(a)(3).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered the extent of immigration officials' authority to detain noncitizens post-removal order under 8 U.S.C. § 1231. The Supreme Court expressly stated that there is "nothing in the history of [§ 1231] that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention.

Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The purpose of detention during and beyond the removal period is to "secure[] the alien's removal." *Id*. at 682. Because the purpose of ongoing detention under 8 U.S.C. § 1231(a)(6) is to facilitate removal, in order to determine whether continued post-removal order detention is lawful, habeas courts must ask whether a petitioner's removal is reasonably foreseeable. *Id*. at 699–700. "[W]here detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed.'" *Id.* at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). In answering whether a noncitizen's removal is reasonably foreseeable, the Supreme Court reemphasized:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Id*. at 699–700.

Petitioner's first, second, and fourth claims argue that under the Supreme Court's reasoning in *Zadvydas*, 8 U.S.C. § 1231(a)(6) does not permit her continued detention because there is not a significant likelihood of her removal in the reasonably foreseeable future. (Dkt. 1 at 9–13.) She argues that Respondents have not provided reason to believe that the Government expects to be able to remove Petitioner, much less that Petitioner's removal is reasonably foreseeable. (Dkt. 15 at 6.) Respondents seek dismissal of Petitioner's claims, first arguing that her *Zadvydas* claim is premature because "Petitioner has not exceeded the six-month presumptively reasonable period following the issuance of her removal order on October 9, 2008, which became final without

appeal," and second, arguing that "Petitioner provides no good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." (Dkt. 12 at 5.)

The Court first briefly analyzes whether Mrs. Zhu's current detention is presumed reasonable under the Supreme Court's reasoning in *Zadvydas*. The Court then analyzes whether Mrs. Zhu's lawful removal is reasonably foreseeable.

### 1. Presumption of Reasonable Detention

The Court first considers whether Mrs. Zhu's current post-removal order detention under 8 U.S.C. § 1231(a)(6) is presumed to be reasonable. In *Zadvydas*, the Supreme Court recognized a 6-month period of presumptively reasonable post-removal-order detention for noncitizens detained under 8 U.S.C. § 1231(a)(6). 533 U.S. at 701 (citations omitted). However, the Supreme Court also acknowledged that "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority" and it is the province of federal courts to answer that question. *Id*. at 699. Where *Zadvydas* considered continuous post-removal detention, Petitioner raises her constitutional and statutory challenges in the context of being re-detained after being released on an order of supervision.

Respondents argue that to prevail, Mrs. Zhu must establish that she has been detained beyond the six-month period of presumptively reasonable detention. (Dkt. 12 at 5.) Respondents further argue that "[e]ven though Petitioner's final order of removal was issued on October 9, 2008, she was only recently detained on October 2, 2025," and therefore the six-month presumptively reasonable period recognized in *Zadvydas* has not yet elapsed. (*Id*. at 7.)

Petitioner responds that the 180-day presumptively reasonable period under *Zadvydas* expired on April 7, 2009, more than sixteen years ago, arguing that Respondents misread 8 U.S.C.

§ 1231(a)(1) and *Zadvydas*. (Dkt. 15 at 6.) Petitioners explain that 1) the plain text of the statute makes clear that the removal period has not reset in this case, and 2) the reasoning of *Zadvydas* explains why the 180-day period does not reset simply because a noncitizen is re-detained. (*Id*. at 6–9.) Petitioner also emphasizes, that "even if the *Zadvydas* six-month presumptively reasonable period only counts days spent behind bars during the current period of detention, that presumption of reasonableness would still be nonetheless rebuttable prior to that period's expiration." (*Id*. at 9.)

The Court agrees with Petitioner's arguments.

First, 8 U.S.C. § 1231(a)(1)(B) states:

> **(B) Beginning of period**
>
> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Thus, once the 90-day removal period has run the only thing that would reset it to the beginning is a new administratively final removal order, a final order from a reviewing Court of Appeals that had previously entered a stay of removal, or a noncitizen's release from criminal detention or confinement. 8 U.S.C. § 1231(a)(1)(B); *see also Diaz-Ortega v. Lund*, 2019 WL 6003485, at *8 (W.D. La. Oct. 15, 2019), *R&R adopted*, 2019 WL 6037220 (W.D. La. Nov. 13, 2019) (citing *Bailey v. Lynch*, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016)) ("The removal period does not restart simply because an alien who has previously been released is taken back into custody."). It is not disputed that Petitioner's final order of removal became administratively final on October 9, 2008, and none of the other subsections of the statute apply to her case. (*See* Dkt. 1, Attach. 1; Dkt. 12 at 2; Dkt. 13, Attach. 1; Dkt. 15 at 7.) In Respondents own words, "[i]t is presumptively

constitutional for an alien to be detained for six months after a final order of removal is entered." (Dkt. 12 at 7) (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). Petitioner's final order of removal was entered October 9, 2008, and six months from that date was April 9, 2009. (*See* Dkt. 12 at 4.) Therefore, the presumptively constitutional period of detention has long passed.

Second, the reasoning of *Zadvydas* explains why the 180-day period—and therefore the presumption of reasonable detention—does not reset simply because a noncitizen is re-detained. In determining whether post-removal detention is reasonable, the habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized." *Zadvydas*, 533 U.S. at 680. While the Supreme Court in *Zadvydas* set six months as a reasonable time period of detention in which the Government can be presumed to be working to effectuate removal in good faith, there is no language in 8 U.S.C. § 1231 or in *Zadvydas* to support the contention that the presumption of reasonable detention resets at the time a noncitizen is re-detained after being released on an order of supervision. *See Sagastizado v. Noem (Sagastizado II)*, 2025 WL 2957002, at *7–8 (S.D. Tex. Oct. 2, 2025) (citing *Zavvar,* 2025 WL 2592543 at *4); *see also Tadros v. Noem*, 2025 WL 1678501, *3 (D.N.J. June 13, 2025); *Alam v. Nielsen*, 312 F.Supp.3d 574, 581–82 (S.D. Tex. 2018) (rejecting the argument that the Section 1231(a)(1)(A) removal period resets when a noncitizen is re-detained); *Escalante v. Noem*, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (citing *Nguyen v. Hyde*, 2025 WL 1725791 (D. Mass. June 20, 2025)); *Villanueva v. Tate*, 2025 WL 2774610, at *9 (S.D. Tex. Sept. 26, 2025).

Petitioner was issued a final order of removal on October 9, 2008, while simultaneously being granted withholding of removal.  (Dkt. 12 at 4.) She was released on an order of supervision,

and then she lived under her order of supervision for nearly 17-years before being re-detained at a routine ICE check-in in 2025. (*See id*.) The Government could have been making the required travel arrangements or securing approval from other countries throughout that time, and the presumption of reasonable detention "differ[s] in circumstances where, before the period of detention began, the Government had a period of time . . . to make the arrangements for removal." *See Zavvar*, 2025 WL 2592543 at *4.

Based on a plain reading of 8 U.S.C. § 1231(a)(1)(A) and the Supreme Court's reasoning in *Zadvydas*, Mrs. Zhu's six-month period of presumptively reasonable detention expired in April of 2009, six months after her removal order became administratively final. Therefore, Mrs. Zhu's current detention is not presumed to be reasonable.[4]

### 2. Whether Mrs. Zhu's removal is reasonably foreseeable

The Court now turns to whether Mrs. Zhu's removal is reasonably foreseeable as is required for her continued detention under § 1231(a)(6). *See Zadvydas*, 533 U.S. at 699. The core responsibility of the habeas court in interpreting whether post-removal-order detention is authorized under § 1231(a)(6) is to "ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id*. "[O]nce removal is no longer reasonably foreseeable,

---

[4] As in *Sagastizado II*, the Court also rejects any argument that Petitioner's claim should be dismissed on the ground that it was brought prior to the conclusion of the six-month presumptively reasonable period. *See* 2025 WL 2957002, at *13 n.3 (rejecting this argument on the ground that there is no "controlling precedent or legal support to indicate that six months must have elapsed *at the time of filing*" and concluding that the six-month period is a rebuttable not preclusive presumption); *see also Villanueva*, 2025 WL 2774610, at *9 ("nothing in *Zadvydas* precludes a challenge to detention before the presumptively constitutional time period has elapsed"); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D. N.J. 2025) (recognizing that the *Zadvydas* presumption is rebuttable and that "[t]o hold otherwise would condone detention in cases where removal is not reasonably foreseeable or even functionally impossible, so long as it did not exceed six months." (citations omitted)).

continued detention is no longer authorized by statute." *Id.* A petitioner's conclusory statements suggesting that removal is not likely in the reasonably foreseeable future are insufficient to make this showing. *Andrade*, 459 F.3d at 543–44. Once the noncitizen demonstrates good reason to believe that removal is not reasonably foreseeable, the government must provide "evidence sufficient to rebut that showing" or release the noncitizen. *Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543.

Respondents argue Petitioner has not met her burden under *Zadvydas*, claiming that she has not offered "any evidence altogether to indicate that he [sic] will not be deported in the reasonably foreseeable future." (Dkt. 12 at 8.)

Petitioner argues that she has met her burden by asserting legal barriers to her removal, including her grant of withholding of removal to the only country to which she has a claim of citizenship or legal immigration status, and by showing that there is no evidence that "any other country on earth has accepted Petitioner for removal." (Dkt. 15 at 12.)

The Court finds that Petitioner has met her burden of demonstrating good reason to believe that her removal is not reasonably foreseeable. Under similar factual circumstances to Mrs. Zhu, courts have found that a petitioner has met their burden by offering proof of a grant of withholding of removal and a lack of assurances that a third country will accept them. *See, e.g., Salazar-Martinez v. Lyons*, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (citations omitted); *Trejo*, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025); *Garcia-Aleman v. Thompson*, 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025).

Here, Petitioner was granted withholding of removal to China in 2008, released on an order of supervision in 2009, and re-detained on October 2, 2025, initially based on Respondents stated

intention to effectuate her removal to Mexico. (*See* Dkt. 13 at 5, 11.) However, Respondents' briefing and declaration in support of their Motion to Dismiss do not acknowledge any pending request or intention to remove Petitioner to Mexico. (*See* Dkt. 12; Dkt. 13, Attach. 1.) Moreover, Petitioner explains that a deportation officer at the Laredo Processing Center confirmed ICE is not removing Ms. Zhu to Mexico because Mexico is not currently accepting Chinese nationals. (Dkt. 15, Attach. 1.) Additionally, Petitioner emphasizes that there are no pending third country requests for acceptance of Petitioner and that the three previously submitted requests were rejected. (Dkt. 15 at 10–11; *id.*, Attach. 1; *see* Dkt. 13, Attach. 1.) Petitioner also points out that over the past seventeen years, while Petitioner was under an order of supervision, Respondents issued Mrs. Zhu Employment Authorization Documents at least ten separate times. (*See* Dkt. 1, Attach. 3.) Pursuant to 8 U.S.C. § 1231(a)(7), "[n]o alien ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding that—(A) the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or (B) the removal of the alien is otherwise impracticable or contrary to the public interest." Therefore, each time Respondents issued Petitioner an EAD, they recognized that removal was either impossible, impracticable, or contrary to the public interest.

Mrs. Zhu 's has provided undisputed evidence that she remains detained with her removal to her native country of China prohibited by law; there are no assurances that she can be removed to a third country; and Respondents have repeatedly recognized that Ms. Zhu's removal was either not possible or otherwise impracticable. Based on this information, the Court finds that Mrs. Zhu has demonstrated good reason to believe that her removal is not reasonably foreseeable.

Having found that Ms. Zhu has carried her burden, the Court turns to whether Respondents have provided evidence to rebut that showing. In similar circumstances, courts have found that

Respondents have not provided sufficient evidence to rebut a Petitioner's claims where there has been lack of progress towards removal while a petitioner is detained. *See Misirbekov v. Venegas*, 2025 WL 3033732, at *1, *2 (S.D. Tex. Oct. 29, 2025) (finding that a "lack of progress in removing Petitioner makes removal unlikely in the foreseeable future" for a petitioner detained over nine months post-removal). "[A] remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Balouch v. Bondi*, 2025 WL 2871914, at *3 (E.D. Tex. Oct. 9, 2025) (citation omitted). Respondents acknowledge that the Government submitted requests for acceptance to the countries of Belize, Costa Rica, and Panama about a month *after* re-detaining Petitioner, and that each request has been denied. (Dkt. 12 at 4; Dkt. 13, Attach. 1.) Respondents then assert, without any additional information, that there is a significant likelihood of removal because Respondents are "actively working with other agencies to identify and secure acceptance from a third country for her removal." (Dkt. 12 at 7.) The Court finds that Respondents lack of progress, concrete information, or plan to remove petitioner is not sufficient to rebut Mrs. Zhu's evidence that her removal is not reasonably foreseeable.

Accordingly, Petitioner has met her burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and Respondents have failed to respond with evidence to rebut that showing. The Court firmly agrees with Petitioner: "the government's plan is the definition of speculative." (Dkt. 15 at 15.)[5] Therefore, Mrs. Zhu's continued detention is unconstitutional and in violation of 8 U.S.C. § 1231.

---

[5] The Court recognizes that Mrs. Zhu also challenges her detention on the grounds that ICE improperly revoked Petitioner's Order of Supervision in violation of 8 C.F.R. § 241.4(l) and the Fifth Amendment. (*See* Dkt. 1 at 11; Dkt. 15 at 13–20.) The Court declines to decide the merits of Petitioners claim that Respondents violated 8 C.F.R. § 241.4(l), given that the Court will grant the

## <u>CONCLUSION</u>

The Court now grants Petitioner's writ of habeas corpus on the basis of the first, second, and fourth claims brought in her Petition, (Dkt. 1), that pertain to whether her continued post-removal detention under 8 U.S.C. § 1231(a)(6) is statutorily and constitutionally permitted.

The Court has considered Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Dkt. 1.) For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **GRANTED IN PART**. Respondents Motion to Dismiss, (Dkt. 12), is **DENIED**.

Respondents are hereby **ORDERED** to release Petitioner on or before **<u>December 26, 2025</u>**, subject to reasonable conditions of supervision. Respondents are hereby **ORDERED** to notify Petitioner's counsel of the exact time and location of her release **no less than three hours** prior to releasing her. Additionally, the Court **ORDERS** that Petitioner's conditions of release, should any be imposed, allow her to travel to Maryland to reside with her family. The Parties must file a Joint Status Report confirming the status of Petitioner's release and advising the Court of her conditions of supervision, if any, no later than **December 29, 2025, at 5 P.M. Central Standard Time.**

Additionally, should Respondents seek to remove Petitioner to a third country, it is **ORDERED** that Respondents must provide at least ten (10) days written notice, including the name of the proposed country of removal and confirmation that the third country has agreed to accept Petitioner, to Petitioner, Petitioner's counsel, and this Court, prior to removal.

The Court further **ORDERS** that Petitioner cannot be re-detained without a material change in circumstances.

IT IS SO ORDERED.

---

relief she seeks based on her claim that her current detention violates 8 § 1231(a)(6) and the Fifth Amendment.

SIGNED this December 23, 2025.

Diana Saldaña
United States District Judge